## Belikoff v. McLaughlin

*Stephen M. Belikoff*, for plaintiff.
*Frank N. Gallagher*, for defendants.

BECKERT, *J.*, July 15, 1977—Plaintiff has taken an appeal to the Superior Court from our order dated June 10, 1977, sustaining defendants' preliminary objections and dismissing his complaint in trespass. In that complaint plaintiff attempted to plead a cause of action for libel, based upon the contents of a letter sent to him by opposing counsel in a case being litigated, a copy of which had also been sent to the Prothonotary of Bucks County. The paragraph in that letter which gave rise to plaintiff's complaint reads as follows: "7. . . . 'Again I regret that the issues and damages in this case have been blown all out of proportion in terms of complexity and amount. However both Mrs. Welker and Liberty Mutual, whose interests I represent in this case refuse to be intimidated or dissuaded from a full and fair defense of this case.'"

Defendants' preliminary objections were sustained for the simple reason that we were, and are, at a loss to understand how plaintiff could sincerely contend that the words quoted above are defamatory to him when read in their plain and popular sense and given their natural meaning, as they must be in order to support a recovery of damages: Fram v. Yellow Cab Co. of Pittsburgh, 380 F. Supp. 1314 (W.D.Pa. 1974); MacRae v. Afro-American Co., 172 F. Supp. 184, (E.D.Pa. 1959), aff'd 274 F. 2d 287 (3d Cir. 1960); Village 2 at New Hope, Inc. v. Hausman, 66 D. & C. 2d 207, 25 Bucks 272 (1974); Thompson v. Farley, 35 D. & C. 2d 157, 14 Bucks 289 (1964). We are obliged to give defend-

ants' words the same significance that other people are likely to attribute to them: Corabi v. Curtis Publishing Co., 441 Pa. 432, 273 A. 2d 899 (1971). Applying such a standard, we concluded that the statements complained of did not, even if read by persons familiar with the language and workings of the law to the degree that a clerk or other employe of the prothonotary's office presumably would have been, contain words which would tend to blacken plaintiff's reputation, expose him to public contempt, hatred or ridicule, or injure him in his business (the test set down in Village 2, supra, and other cases cited therein).

While the statements in the letter to plaintiff left no doubt but that the subject litigation had escalated to a degree which opposing counsel felt was unwarranted, there was no language therein which suggested, directly or by imputation, that plaintiff had created such a situation by any improper means or had in any way acted without integrity. It is well-recognized among practitioners of the law that one method to effectively advance the interests of one's client in a case being litigated is to inject more issues or to complicate those which already exist, in an attempt to coerce the opposition into being more receptive to a settlement of the case. There is certainly room for considerable difference of opinion among counsel as to when such tactics are justified and when they are not. While it is arguable that at some point and under certain particular circumstances tactics designed to inconvenience opponents and cause them additional expense in litigation may be unconscionable, no such circumstances are evident here or reasonably imputable from the context of the correspondence complained of, and we, therefore, concluded that

the letter amounted to no more than a communication of a reasonable difference of opinion between counsel. The words did not impute to plaintiff any fraud or want of integrity in his professional dealings.

Having thus concluded that plaintiff failed to prove defendants' words to be actionable per se, we further concluded that his action not be sustained on the theory that the words were actionable per quod, since the complaint contained no allegation that he had suffered any special damages and general damages are not recoverable for a defamation actionable per quod: McDonald v. Lee, 246 Pa. 253, 92 Atl. 135 (1914).